# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Wm. J. Lawson
Secretary of State
Austin, Texas

Dear Sir:

Attention: Mr. Will Mann Richardson

Opinion No. O-3254
Re: Whether or not the Secretary of
State is authorized to grant an
extension of the corporate exis-
tence of a mutual assessment in-
surance association under Arti-
cles1315 (a) and (b), Vernon's
Texas Civil Statutes.

This will acknowledge receipt of your letter of
March 7, 1941, in which you seek an opinion of this depart-
ment on the above captioned question. Your letter of re-
quest reads:

"The Texas Independence Life Insurance Com-
pany has applied to us for a renewal of its
charter under the provisions of Article 1315 (a)
and 1315 (b). In view of the fact that this
is a state-wide mutual assessment insurance
association, it could not now be granted a
charter by this Department.

"Article 4859f of the Revised Civil Stat-
utes provides that those corporations which
had been granted a charter by the Secretary of
State could comply with the requirements of
the Insurance Department and by doing so, ac-
cording to Section 15 of that article, their
charters 'are expressly continued in force
during the terms of said charters'. That act
was passed in 1933. In 1933, Article 1315 (a)
and (b) was passed providing that the Secre-
tary of State could extend the corporate exis-
tence of a company incorporated for any purpose
authorized 'under this title'. This act also

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

provides that the filing fee to be paid shall be such fee as the corporation would be required to pay if it were applying for a new charter. The act also requires that the Secretary of State find that the corporation is solvent and its capital unimpaired. In this case, the Secretary of State could not now grant a charter to a state-wide mutual insurance company and we could not find that its capital is unimpaired, as it has no capital stock.

"In view of these facts, we wish to request an opinion from your Department as to whether the Secretary of State is authorized to grant an extension of the corporate existence of a mutual assessment insurance association under Article 1315 (a) and (b)."

The facts disclosed in the affidavit of Mr. A. B. Brannen, Secretary of Texas Independence Life Insurance Company, which accompanies your letter of inquiry, show that Texas Independence Life Insurance Company was incorporated for a term of 49 years from the 9th day of January, A. D. 1892. Thus it is seen that the charter of such company expired by operation of law on the 8th day of January, 1941.

The 43rd Legislature passed House Bill No. 303, now known as Chapter 8a, Title 78 of the Revised Civil Statutes, which was designed to place all corporations doing an insurance business not then under the supervision of the Insurance Department by virtue of a pertinent statute under their supervision.

It was provided in such bill, now Section 1 of Article 4859f:

"Sec. 1. Any corporation organized and incorporated under a pre-existing law in this State without capital stock and not for profit, which law has been amended or repealed or re-enacted, and which was operating and actually carrying on in this State immediately prior to January 1, 1933, the state-wide business of mutually protecting or insuring the lives of its members by assessments made upon its members may comply with the terms of this Act, subject to the subsequent provisions hereof."

231

Section 2 of such article provides that any corporation described in Section 1 thereof could avail itself of the rights and privileges conferred by such law conditioned that they did so within six months after the effective date of the act.

The Texas Independence Life Insurance Company did avail itself of the privileges conferred by such law and has since operated under and has been known and commonly referred to as a 303 company.

It was the legislative intention as expressed in House Bill 303 to expressly repeal all charters of insurance companies then in existence which failed or refused to qualify thereunder with, of course, exception of those qualified under other pertinent statutes. Section 14 thereof provided in part:

"..... The charter of each corporation in this State entitled to comply with the terms of this Act which does not make application to do so within six (6) months after the Act shall go into effect is hereby expressly repealed and revoked, and such corporation is hereafter forever prohibited from carrying on its business in this State. It is the expressed intent of this section and this Act to revoke, repeal and cancel the charter of every corporation, dormant, or otherwise, exempt from the insurance laws of this State by Article 2971a, Revised Statutes 1879, and Articles 3096 and 3096w, Revised Statutes of 1895, which fails to comply with the terms of this Act. ....." (Underscoring ours)

Thus it is seen that the legislative intention relative to such corporations is plainly, intelligently and unmistakably expressed. They provided, as they were required to do, that the charters of all corporations qualifying thereunder were to be "expressly continued in force during the terms of said charters" (Underscoring ours). They could not have repealed the existing charters without offering them opportunity to qualify under the regulatory law. See New Orleans Waterworks Company v. Rivers, Louisiana, 115 U. S. 74, 29 L. Ed. 525. The Legislature did not then provide that the charters of those corporations qualifying were to be

thereafter renewed or extended. Statutory authority for re-
newing and extending such charters was not then existent and
was nowhere provided for at that time. If such authority now
exists it is by reason of Articles 1315 (a) and (b) passed at
the Regular and First Called Sessions respectively of the
45th Legislature. Article 1315 (a) reads:

"Subject to a finding by the Secretary of
State as hereinafter provided, any private cor-
poration organized or incorporated for any pur-
pose or purposes authorized under this Title,
at any time within ten (10) years prior to the
expiration of its charter, or any extension
thereof, may extend such charter and the cor-
porate existence of such corporation for an ad-
ditional period of not to exceed fifty (50)
years from the expiration date of the original
charter, or any extension thereof, with all
the privileges, powers, immunities, right of
succession by its corporate name, and rights
of property, real and personal, exercised and
held by it at such expiration date, to the
same intents and purposes as upon original
incorporation! The manner of extending any
such charter shall be by a resolution in writ-
ing, adopted at any annual or special meet-
ing of stockholders called for that purpose
by stockholders holding a majority of the
shares of capital stock of such corporation
then outstanding, such resolution to specify
the period of time for which the charter is
extended, and a copy of such resolution, duly
certified by the secretary of the corporation,
under the corporate seal, shall be filed and
recorded in the office of the Secretary of
State. Upon the adoption of such resolution
and the filing of a certified copy thereof with
the Secretary of State, together with payment
of the filing fee herein prescribed, the char-
ter and corporate existence of such corporation
may be extended for the additional period of
time recited in such resolution. The filing
fee to be paid for any such extension of a
charter shall be such fee as said corporation
would be required under the Statutes of Texas

Honorable Wm. J. Lawson, Page 5

to pay in the event it was then applying for
a new charter instead of extending its then
existing charter.

"Such extensions, however, may be made
only in instances where the Secretary of State
shall have found, after proper investigation,
that such corporation is solvent and its capi-
tal unimpaired."

Article 1315 (b) reads:

"The provisions of Article 1315(a) shall
extent to and include all private corporations
incorporated under the general laws of Texas.
The period of ten (10) years prior to the ex-
piration of the charter or any extension there-
of referred to in Article 1315(a) shall in-
clude the period of time during which such
corporation may have continued its existence
under the provisions of Article 1389 of the
Revised Civil Statutes of 1925."

The settled rule of construction of grants by the
Legislature to corporations whether public or private, is
that only such powers and rights can be exercised under them
as are clearly comprehended in the words of the act or de-
rived therefrom by necessary implication.  Any ambiguity or
doubt arising out of the terms used by the Legislature must
be resolved in favor of the public.  Sutherland on Statutory
Construction, p. 489, citing:  Petersburg v. Metzher, 21
Ill. 205; Stetson v. Kempton, 13 Mass. 272; Waxahachie v.
Brown, 67 Tex. 519, and other authorities too numerous for
citation herein.

This rule of strict construction is discussed at
great length in Thompson on Corporations, Vol. 1, p. 397,
wherein he discussed and quotes from the case of Packer v.
Sunberry & Co. R. Co., 19 Pa. St. 211, as follows:

"But to justify a strict construction it
is not necessary to consider the nature and
circumstances of the particular law before us,
for it belongs to a class of statutes which,
by a long established and well defined rule of
interpretation in all the states of the Union,

234

as well as in England, must receive and uniform-
ly have received the strictest possible construc-
tion.  All acts of incorporation and acts extend-
ing the privilege of incorporated bodies, are to
be taken most strongly against the company.
Whatever is not expressly and unequivocally
granted in such acts is taken to have been with-
held."  (Underscoring ours)

Applying the above rules of construction to Arti-
cle 1315 (a) and (b), can it be urged that there is no doubt
but that such grant of authority is extended to the Texas
Independence Life Insurance Company and others similarly
situated?  Article 1315 (a) expressly provides that the
resolution to extend the corporate life must be ". . . adopt-
ed at any annual or special meeting of stockholders . . .
by stockholders holding a majority of the shares of capital
stock . . ."  (Underscoring ours.)  It is further provided
that "such extensions, however, may be made only in instances
where the Secretary of State shall have found . . . the cor-
poration solvent and its capital unimpaired."  Since there
are no stockholders in a mutual life insurance company to
pass the resolution required, and since such corporation was
created without capital stock and presumably as a non-profit
corporation the required findings of the Secretary of State
are rendered impossible of performance.

Although the wording of Article 1315 (b) is apparent-
ly broad enough to cover all corporations, it is our opin-
ion that Article 1315 (a) and (b) considered together, were
not intended to and do not encompass the type of corporation
involved in this opinion request.  It necessarily follows
that your request is answered in the negative.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED MAR 28, 1941

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS

By *Lloyd Armstrong*

Lloyd Armstrong
Assistant

LA:CO



APPROVED
OPINION
COMMITTEE
BY *P.m.h*
CHAIRMAN